KARISH & BJORGUM PC
A. Eric Bjorgum (SBN 198392)
Marc Karish (SBN 205440)
119 E. Union Street, Suite B
Pasadena, CA 91103
Telephone: (213) 785-8070
Facsimile: (213) 995-5010
Email:    eric.bjorgum@kb-ip.com
          marc.karish@kb-ip.com

JEFFREY A. KOBULNICK - Bar No. 228299
MARK D. BRUTZKUS - Bar No. 128102
JOSEPH M. ROTHBERG - Bar No. 286363
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: (818) 827-9000
Facsimile: (818) 827-9099
Email:    jkobulnick@ebg-law.com
          mbrutzkus@ebg-law.com
          jrothberg@ebg-law.com

Attorneys for Plaintiff
**ANHING CORPORATION**

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANHING CORPORATION, a California corporation,<br><br>               Plaintiff,<br><br>     v.<br><br>THUAN PHONG COMPANY LIMITED, and DOES 1-10,<br><br>               Defendants. | Case No. CV13-05167 BRO (MANx)<br><br>**PLAINTIFF ANHING CORPORATION'S NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF PLAINTIFF FOR ENHANCED DAMAGES, ATTORNEYS' FEES PURSUANT TO 15 U.S.C. §1117(a) AND PREJUDGMENT INTEREST**<br><br>**[PROPOSED ORDER AND DECLARATIONS OF ERIC BJORGUM, JEFFREY KOBULNICK AND BEN T. LILA FILED CONCURRENTLY HEREWITH]**<br><br>**Date: November 30, 2015**<br>**Time: 1:30 a.m.**<br>**Place: Courtroom 14**<br>**Judge: Hon. Beverly Reid O'Connell** |

## NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES

PLEASE TAKE NOTICE that on November 30, 2015, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Beverly Reid O'Connell, in Courtroom 14 of the above-entitled Court, located at 312 North Spring Street, Los Angeles, California 90012, Plaintiff Anhing Corporation will and hereby does move this Court for an order enhancing its damages, granting Plaintiff its attorneys' fees and ordering prejudgment interest.

This motion is based upon the trial and exhibits received in this matter, this Notice of Motion, the Memorandum of Points and Authorities filed concurrently herewith, the Declaration of Eric Bjorgum, the Declaration of Jeffrey Kobulnick, the Declaration of Ben T. Lila, the accompanying proposed order, the papers and pleadings on file herein, matters subject to judicial notice, and upon such other evidence and argument as may be presented prior to or at the hearing of this Motion.

Respectfully submitted,

Dated: October 22, 2015            KARISH & BJORGUM, PC

By: /s/ A. Eric Bjorgum
        A. ERIC BJORGUM

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   FACTS ........................................................................................................ 2

III.  APPLICABLE LAW .................................................................................. 3

IV.  ARGUMENT .............................................................................................. 3

    A.  Plaintiff Is Entitled to Enhanced Damages ................................... 3

          1.  The $10,000 Damage Award Should Be Trebled ............................ 5

          2.  The Court Should Enhance the Disgorgement Amount to $100,000 ............................................................................................ 6

    B.  Plaintiff Is Entitled to Attorneys' Fees ........................................ 7

          1.  Plaintiff Anhing Corporation Is The Prevailing Party Because It Obtained Some of the Relief Requested in Its Complaint .......... 9

          2.  This Is An Exceptional Case ........................................................ 11

          3.  Defendant's Requested Attorney's Fees Are Reasonable ........ 13

             a.  Standards for Determining Reasonableness ....................... 13

          4.  A Lodestar Amount of $928,435 Is Reasonable For This Case ................................................................................................ 15

             a.  Defendant's Counsel's Rates Are Eminently Reasonable. .. 15

             b.  Defendant's Counsel Has Provided Billing Records for Its Counsel, Showing Reasonable Time for a Matter of This Complexity ............................................................... 16

          5.  The *Kerr* Factors Indicate that the Lodestar Amount Should Be Augmented, Even Thought Plaintiff Does Not Seek Augmentation ............................................................................... 18

    C.  Plaintiff Is Entitled to Prejudgment Interest ............................. 22

V.    CONCLUSION ........................................................................................ 23

PLAINTIFF'S MOTION FOR ENHANCED DAMAGES, ATTORNEYS' FEES

1294365

# TABLE OF AUTHORITIES

**Cases**

*A & M Records, Inc. v. Abdallah*, 948 F. Supp. 1449, 1458 (C.D. Cal. 1996) .............5

*Alpo Petfoods,, Inc. v. Ralston Purina Co.,* 997 F.2d 949, 955 (D.C.Cir.1993) ...........4

*Audi AG v. D'Amato*, 469 F.3d 534, 81 U.S.P.Q.2d 1108, 2006 FED App. 0439P (6th Cir. 2006).………………………………………………………………………………8

*Brighton Collectibles, Inc. v. Coldwater Creek Inc.,* No. 06–cv–01848–H–POR, 2009 U.S. Dist. LEXIS 4005, at *12, 2009 WL 160235 (S.D.Cal. Jan. 20, 2009) ..........16

*Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 30 U.S.P.Q.2d 1173 (11th Cir. 1994) ....................................................................................................22

*Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002) ......................14, 22

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003) ............................................................................................5

*Designing Health, Inc. v. Erasmus,* No. CV 98-4758 LGB (CWX), 2003 WL 25902463, at *25 (C.D. Cal. May 1, 2003)..............................................................21

*Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1218 (9th Cir. 2003)..7, 11

*Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992)............10

*Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) ..................................15

*Fitbug Ltd. v. Fitbit, Inc.*, No. 13-1418 SC, 2015 WL 3543116, at *1 (N.D. Cal. June 5, 2015)...............................................................................................................11

*Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1992)..........................................15

*George Basch Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1540 (2d Cir.) ..........................7

*Getty Petroleum Corp. v. Barto Petroleum Corp.,* 858 F.2d 103, 113 (2d Cir.1988)....4

*Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989).......................................................................................................................23

*Gracie v. Gracie*, 217 F.3d 1060, 1069-1071 (9th Cir. 2000)...................................8,9

*Hansen Beverage Co. v. Vital Pharm., Inc,* 08-CV-1545-IEG (POR), 2010 WL 3069690 (S.D. Cal. 2010). ........................................................................................7

*Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).........9

*Home, Inc. v. W. Va. Dep't of Health *767 & Human Res.,* 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) ........................................................................9

*Horphag Research Ltd., v. Garcia*, 2002 U. S. Dist. LEXIS 26771 (C.D. Cal, 2002) 11

*Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir.1993)...............................14

*Inwood Laboratories, Inc. v. Ives Laboratories* (1982) 456 U.S. 844, 854, fn. 14 ...... 13

*Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987) ........................... 14

*Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir.1975) .................... 8, 14

*Kessler v. Assocs. Fin. Servs. Co. of Hawaii*, 639 F.2d 498, 500 n. 1 (9th Cir.1981) .. 14

*Kohler Co. v. Domainjet, Inc.*, No. 11–cv–1767–BEN, 2013 U.S. Dist. LEXIS 50452, 6–7, 2013 WL 1411940 (S.D.Cal. Apr. 7, 2013) ..................................................... 16

*Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir.1985) ....... 7

*Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614, 95 U.S.P.Q.2d 1855 (9th Cir. 2010) ......................................................................................................................... 9

*Love v. Mail on Sunday,* 2007 WL 2709975, at *3, 2007 U.S. Dist. LEXIS 97061, at *3 (C.D.Cal.2007) .................................................................................................... 21

*Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir.2004) ....................................................... 15

*Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir.1968) ................................................................................................................................... 6

*Mobius Management Systems, Inc., v. Fourth Dimension Software, Inc..,* 880 F.Supp. 1005, 1025 (S.D.N.Y.1994) ...................................................................................... 4

*Montgomery v. Noga*, 168 F.3d 1282, 49 U.S.P.Q.2d 1961 (11th Cir. 1999) .......... 8, 10

*Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978) ....................................... 9

*Partners for Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 431, 439 (C.D. Cal. 2012) ....................................................................................................................... 21

*PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999) .......................... 5

*Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir.1982) ................................................................................................................... 7

*Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 61 U.S.P.Q.2d 1385 (5th Cir. 2002) .......................................................................................................................... 9

*Sands, Taylor & Wood v. Quacker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir.1994) ........ 4

*Schneider v. City. of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) ......................... 23

*Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.*, 668 F.3d 677, 687, 101 U.S.P.Q.2d 1553 (9th Cir. 2012) ............................................................................ 22

*Super Duper, Inc. v. Mattel, Inc.*, No. 6:05-1700-HFF-WMC, 2009 WL 866461, at *3-4 (D.S.C. Mar. 31, 2009) *aff'd in part,* 382 F. App'x 308 (4th Cir. 2010) ................ 4

*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 19 U.S.P.Q.2d 1253, 1264 (5th Cir. 1991), aff'd, 505 U.S. 763, 120 L. Ed. 2d 615, 112 S. Ct. 2753, 23 U.S.P.Q.2d 1081 (1992) ......................................................................................... 22

PLAINTIFF'S MOTION FOR ENHANCED DAMAGES, ATTORNEYS' FEES

1294365

*Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.*, 175 F.R.D. 658, 663
(S.D.Cal.1997) ................................................................................................ 5

*Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S.Ct.
1486, 103 L.Ed.2d 866 (1989) ....................................................................... 9

*T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1135 (W.D. Wash. 2012) ............ 5

*TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832, 99 U.S.P.Q.2d 1628, 2011-
2 Trade Cas. (CCH) ¶77637 (9th Cir. 2011) ........................................... 8, 10

*TriReme Med., LLC v. AngioScore, Inc.*, 2015 WL 3463500, at *2 (N.D. Cal. May 29,
2015) .............................................................................................................. 11

*Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 34 F. App'x 312, 315 (9th Cir.
2002) ................................................................................................................ 5

**Rules**

15 U.S.C. § 1117(a) .................................................................................. 3, 5, 7, 11

**Other Authorities**

McCarthy on Trademarks and Unfair Competition § 30:92 (4th ed.) ........................ 4

The Lanham Act § 35(a) .............................................................................................. 3

PLAINTIFF'S MOTION FOR ENHANCED DAMAGES, ATTORNEYS' FEES

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Anhing Corporation ("Plaintifff" or "Anhing" respectfully submits this Memorandum of Points and Authorities in Support of its Motion Enhanced Damages, for Attorneys' Fees and Prejudgment Interest (hereinafter, the "Motion").

## I.    INTRODUCTION

Plaintiff Anhing Corporation ("Plaintiff" or "Anhing") has been reasonable throughout this case.  Its primary goal from the beginning has been for Defendant Thuan Phong Co., Ltd. ("Defendant" or "Thuan Phong") to stop confusing the public as to the source of its rice noodles and rice paper.  Anhing has a U.S. trademark registration on MY-THO for these products.  Defendant uses "MỸ THO" in a large font at the top of the package on the exact same products.  To put it bluntly, stopping that usage should have been a no-brainer.  Anhing never had an issue with Defendant using the word "MỸ THO" to designate the city of its product origin – Anhing only required that that usage be standard, with the origin put in a smaller font and not emblazoned across the package in a confusing manner.

Yet Defendant persisted and refused to change its packaging, forcing this case to trial.  Anhing also had a trade dress claim – and the jury found it had trade dress rights that weren't infringed – but it offered to drop that claim just before trial, which would have simplified matters considerably at trial. But Defendant refused to stipulate, forcing that issue to go to the jury as well.

As further proof of Anhing's good faith, it did not ask for unreasonable damages at trial.  It put on a chart showing the Defendant's net profit was $687,135 from the sale of allegedly infringing goods.  Technically, Anhing could have stopped there and let the Defendant prove costs and overhead.  But Anhing asked for less than half of that amount, $291,130.

However, though the jury found willful infringement and that Anhing was entitled to an award of profits and disgorgement, it only awarded damages of $18,690.52, which represented $10,000 of Anhing's profits and $8,690.52 in

1294365

disgorgement.  Still, Defendant has refused to pay even that amount, choosing instead to appeal the entire verdict.  Thus, it appears that Defendant only speaks the language of "upside" and "downside", and it clearly needs more downside to take this situation seriously.  Thus, Anhing files this motion to request enhanced damages and disgorgement, as well as attorneys' fees and prejudgment interest.

On the enhancement issue, the Court is empowered to increase damages up to three times.  Anhing asks for the full amount here because the increase will help compensate Anhing for its damages and deter such conduct by Defendant in the future.  For disgorgement, Anhing asks that the Court increase the amount disgorged to $100,000.  The purpose of disgorgement is to discourage infringement so that a Defendant does not profit from the infringement.  The award of $8,690.52 is the proverbial "slap on the wrist" that will not deter infringement in the future.  This is exactly the situation that calls for judicial enhancement of damages.

For fees, Anhing is also requesting a reasonable amount -- $663,351.40., which represents a 25% discount on fees actually paid, which number also represents a discount of $53,793 to account for overlap of firms during the trial**.**  Finally, Anhing asks that the Court award it prejudgment interest so that it can be adequately compensated for the loss of use of its money.


## II.   FACTS

On May 5, 2015, a jury found that Defendant Thuan Phong Company willfully infringed Anhing's U.S. Trademark Registration No. 1393449 for MY-THO and awarded Anhing $18,690.52 in damages.  (See D.N. 330.) Thereafter, this Court granted Anhing's motion for a permanent injunction.  (See D.N. 372.)  On October 8, 2015, this Court entered Judgment on the verdict for the Plaintiff and awarded Anhing $18,690.52 and prejudgment interest.  It also found Anhing to be the prevailing party for purposes of costs.  See D.N. 395-1.

The jury's finding of willful infringement was amply supported. As the Court

may recall, Defendant was Anhing's supplier and evidence was introduced at trial that Defendant knew of Anhing's MY-THO mark as early as 2005, when Plaintiff, Mr. Pham Van Tu visited Anhing's facilities.   Before judgment was even entered, Plaintiff brought two post-trial motions challenging the verdict.  The Court denied both motions and made extensive findings on how the verdict and finding of willfulness are supported. Accordingly, Defendant's willful infringement renders this an exceptional case entitling Anhing to recover its attorneys' fees, as well as an enhanced damage award.

## III.   APPLICABLE LAW

The Lanham Act § 35(a), 15 U.S.C.A. § 1117(a) grants the Court significant discretion to increase awards of damages and profits and also award attorneys' fees.  That section provides:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

The legal standards for the issues of damage enhancement, profit adjustment and attorneys' fees, respectively, are discussed as they arise below.

## IV.   ARGUMENT

### A.  Plaintiff Is Entitled to Enhanced Damages

Under the Lanham Act, enhanced damages are intended to assure that the

Plaintiff will be adequately compensated and are also intended to deter infringement. Summarizing this law, one district court wrote:

> [The policies behind enhanced damages] include deterring Plaintiff from further misconduct. *See Sands, Taylor & Wood v. Quacker Oats Co.,* 34 F.3d 1340, 1348 (7th Cir.1994) (stating that remedial provisions are intended to "provide a sufficient deterrent to ensure that the guilty party will not return to its former ways and once again pollute the marketplace"); *Mobius Management Systems, Inc., v. Fourth Dimension Software, Inc..,* 880 F.Supp. 1005, 1025 (S.D.N.Y.1994) (noting that while punitive damages are not allowed under the Lanham Act, its treble "enhancement [provisions] may be used to deter further willful violations"). In addition, these provisions are used "to compensate a plaintiff for its actual injuries." *Getty Petroleum Corp. v. Barto Petroleum Corp.,* 858 F.2d 103, 113 (2d Cir.1988). The Court may, therefore, "enhance a monetary recovery of damages or profits" or "award plaintiff a full accounting of an infringer's profits." *Id. See also Alpo Petfoods,, Inc. v. Ralston Purina Co.,* 997 F.2d 949, 955 (D.C.Cir.1993) ("An enhancement is appropriate to compensate a Lanham Act plaintiff only for such adverse effects as can neither be dismissed as speculative nor precisely calculated.... Lost profits and market distortion are . . appropriate bases for the catch-all enhancement ").

*Super Duper, Inc. v. Mattel, Inc.*, No. 6:05-1700-HFF-WMC, 2009 WL 866461, at *3-4 (D.S.C. Mar. 31, 2009) *aff'd in part,* 382 F. App'x 308 (4th Cir. 2010).

Where damages have been increased, the reason usually given is that the defendant's infringement was "knowing and willful."  5 McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:92 (4th ed.)

**1.  The $10,000 Damage Award Should Be Trebled**

In this case, the jury found willful infringement but only awarded damages of $10,000, despite the fact that Plaintiff's counsel detailed grounds for a damages award of $291,130.  (Trial transcript 747, Bjorgum Decl., Exh. D.)  Plaintiff's argument was based upon a 25% damage calculation of its lost sales.  "15 U.S.C. § 1117(a) confers authority on the court to treble defendant's profits in the event that compensatory damages are inadequate to deter future infringing conduct." *PepsiCo v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999); *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1135 (W.D. Wash. 2012); *See Taylor Made Golf Co., Inc. v. Carsten Sports Ltd.,* 175 F.R.D. 658, 663 (S.D.Cal.1997).

One court from this District found that if the violation is willful, the trial court should award treble damages unless it finds "extenuating circumstances." *A & M Records, Inc. v. Abdallah*, 948 F. Supp. 1449, 1458 (C.D. Cal. 1996), as amended (Nov. 21, 1996*;  Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 34 F. App'x 312, 315 (9th Cir. 2002) *rev'd sub nom. Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 123 S. Ct. 2041, 156 L. Ed. 2d 18 (2003) (affirming doubling damages and noting trial court "doubled the award in order to deter future infringing conduct by Dastar—a permissible ground under the Lanham Act").

Here, clearly, $10,000 was insufficient to compensate Plaintiff for its losses related to willful infringement of the MY-THO trademark.  The Court should treble this amount.  Trial Exhibit 20 showed declining sales $533,660 for the MY-THO noodle products since 2011.  Exhibit 21 showed declining sales of $630,863 in sales of MY-THO rice paper since 2011.  (These Exhibits are attached as Exhibit C to the Bjorgum Declaration.) Admittedly, there was no expert report, but Plaintiff's president Ms. Dai Yau testified that the profit margin on these products is 25% (Trial testimony at 162163 and 166.)

Applying that profit margin, Plaintiff showed declining sales 14,131 (low price $36.00 per case) cases of rice noodles and sales on rice paper of 11,291 cases (low

price $53.00 per case).  Assuming a profit margin of 25% ($9.00 and $13.25, respectively), that would equate to $127,179 in lost profits on the noodles and $149,605.75 in lost profit on the rice paper.  Plaintiff also put on evidence of advertising costs of over $500,000 per year on its brands. (Trial testimony at 187, Bjorgum Decl., Exh. D; Trial Exh. 29, Bjorgum Decl., Exh. G.)

Also, long term damage was done to the MY-THO brand of noodles.  The Court may remember that Defendant's noodle product was sold in 14 ounce packages, rather than the 16 ounce packages sold by Plaintiff.  A customer thinking they bought a 16 ounce noodle package would be upset to find the package was two ounces light, and that feeling is going to associated with the MY-THO brand.

The gist of this evidence is that this market generates hundreds of thousands to low millions of dollars in revenue each year for these parties, and Plaintiff has spent significant sums developing its business only to lose some of it to its own supplier, held to be a willful infringer of its trademarks.  $10,000 in damages is simply not sufficient to compensate Plaintiff for willful infringement of its mark by its prior supplier.  Even $30,000 is not sufficient, but it certainly helps drive home the point that trademark infringement should not be an economic decision.

### 2.  The Court Should Enhance the Disgorgement Amount to $100,000.

For much the same reasons, the Court should substantially increase the amount of disgorgement.  $100,000 is minimally reasonable in this scenario.   "While damages directly measure the plaintiff's loss, defendant's profits measure the defendant's gain." *George Basch Co. v. Blue Coral, Inc.,* 968 F.2d 1532, 1540 (2d Cir.) (emphasis in original), *cert. denied,* 506 U.S. 991 (1992). "The Ninth Circuit has recognized three justifications for awarding an infringer's profits: (1) as a means of compensating the plaintiff for diverted sales; (2) to prevent unjust enrichment; and (3) to serve a deterrence policy. *See Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 123 (9th Cir.1968). Intent of the infringer is relevant. *Id.*  The Ninth

Circuit has found that if infringement is willful, a remedy no greater than an injunction "slights" the public." *Hansen Beverage Co. v. Vital Pharm., Inc.*, 08-CV-1545-IEG (POR), 2010 WL 3069690 (S.D. Cal. 2010) (citing *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272, 1274 (9th Cir.1982)).

Here, the evidence at trial showed that, by Defendant's own numbers, its profits were $687,135.75 on the infringing product.  Plaintiff was only required to show Defendant's profits and no more; it is up to Defendant to show expenses.  *See* Comments, Ninth Circuit Model Jury Ins. 15.26 (citing *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973 (2d Cir.1985) (defendant's own statements as to profits provided sufficient basis for calculation of defendant's profits under 15 U.S.C. § 1117(a)). Obviously, Defendant did not show $679,000 in costs and overhead. Therefore, Defendant profited from its infringement and was unjustly enriched, possibly to the tune of hundreds of thousands dollars.  Requiring disgorgement of $100,000 reasonable.

Further, disgorgement of $8,690.52 does absolutely nothing to discourage this sort of conduct.  Another supplier or competitor of Anhing could take one of its brands and infringe under the impression – correct or not – that it could earn hundreds of thousands of dollars and only be required to return less than 5% of its revenues at some distant point in the future. There were multiple instances of actual confusion shown at trial, and it is uncontested that the parties sell in the same stores.  To allow Defendants to escape this sort of public confusion with barely a slap on the wrist does not discourage infringement. Rather, it *encourages* it.

### B.  Plaintiff Is Entitled to Attorneys' Fees

Under the Lanham Act, "the court in exceptional cases may award reasonable attorney fees to the prevailing party."  An exceptional case is one where there is intentional, deliberate or willful infringement.  *Earthquake Sound Corp. v. Bumper Industries*, 352 F.3d 1210, 69 U.S.P.Q.2d 1119 (9th Cir. 2003) ("A trademark case is

exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully.") *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832, 99 U.S.P.Q.2d 1628, 2011-2 Trade Cas. (CCH) ¶77637 (9th Cir. 2011) (Defendant's conduct must be "fraudulent, deliberate or willful." District Court abused its discretion in denying attorney fees by focusing on the failure to prove damages and failing to consider defendant's conduct and the benefits plaintiff conferred on the public by stopping false advertising.)

A plaintiff who succeeds in obtaining an injunction plus even nominal damages is the "prevailing party" and is entitled to receive attorney's fees in an exceptional case. *Montgomery v. Noga*, 168 F.3d 1282, 49 U.S.P.Q.2d 1961 (11th Cir. 1999); *Audi AG v. D'Amato*, 469 F.3d 534, 81 U.S.P.Q.2d 1108, 2006 FED App. 0439P (6th Cir. 2006) (obtaining injunctive relief alone makes plaintiff the "prevailing party" for purposes of the attorney's fee statute).

The measurement of a reasonable attorney's fee is made using the lodestar method of computation. *Gracie v. Gracie*, 217 F.3d 1060, 1069-1071 (9th Cir. 2000). "In appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 69-70 (9th Cir.1975), that have not been subsumed in the lodestar calculation." *Id.* at 1070.

The prevailing party in a multi-claim case where only some of the claims are eligible for attorneys' fees the Court should reduce the total attorneys' fees to deduct for the prevailing plaintiff's time spent on the claims for which attorneys' fees are not available.  However, if the claims are so intermingled that the factual basis and the legal theories are essentially the same, the court may award all of the prevailing party's attorney's fees, making no deduction for the non-Lanham Act fee eligible counts.  The impossibility of making an exact apportionment does not relieve the

1294365

Court of having to make some apportionment unless the court finds that the claims are so inextricably intertwined that even an estimated adjustment would be meaningless. *Gracie v. Gracie*, 217 F.3d 1060, 55 U.S.P.Q.2d 1256 (9th Cir. 2000) (it was error for the district court to fail to apportion attorney's fees); *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 61 U.S.P.Q.2d 1385 (5th Cir. 2002) ("A court should permit recovery for work on non-Lanham Act claims only if 'the Lanham Act and non-Lanham Act claims are so intertwined that it is *impossible to differentiate* between work done on claims,'" quoting from *Gracie*.); *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 614, 95 U.S.P.Q.2d 1855 (9th Cir. 2010) (Affirming award of all attorney fees where Lanham Act claims and other claims were "inextricably intertwined.").

### 1.  Plaintiff Anhing Corporation Is The Prevailing Party Because It Obtained Significant Relief Requested in Its Complaint

Under federal law, a "prevailing party" is one that succeeds " 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.' " *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). A litigant qualifies as a prevailing party if it has obtained a "court-ordered 'change [in] the legal relationship between [the plaintiff] and the defendant.' " *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health  & Human Res.*, 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (alterations in original) (quoting *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). To satisfy this requirement, the suit must have produced a material alteration of the legal relationship between the parties. *Buckhannon,* 532 U.S. at 604. This alteration may be the result of an enforceable judgment or comparable relief through a consent decree. *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566,

1294365

121 L.Ed.2d 494 (1992).

There were several claims and counterclaims in this case. Plaintiff prevailed on its claim for infringement of its registered mark. It also obtained a permanent injunction. The Ninth Circuit has stated that an injunction is the "optimal" means of correcting violation of false advertising under the Lanham Act. *TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 829 (9th Cir. 2011). Other courts have held that receiving a permanent in junction is a "significant benefit" that renders a plaintiff the "prevailing party" entitled to fees. *Montgomery,* 168 F.3d 1304 (injunction indicated plaintiff was prevailing party even though damage award was $30).

Defendant succeeded on none of the issues it affirmatively claimed – either as counterclaims or affirmative defenses. Defendant brought counterclaims for fraud on the trademark office, cancelation of the trademark registration, false designation of origin and unfair competition under 15 U.S.C. Section 1125(a) and false advertising under Cal. Bus. & Prof. Code Section 17500. Only the counterclaims for false advertising and state unfair competition made it to trial. Plaintiff prevailed on both. Plaintiff also prevailed on Defendant's affirmative defenses of unclean hands, fair use and laches. (D.N. 330; D.N. 372.)

Finally, Plaintiff brought a claim for trade dress infringement (the jury found the existence of trade dress but no infringement), infringement of an unregistered mark (the jury found Plaintiff had no rights in the unregistered mark), California common law trademark infringement (upon which it prevailed) and statutory unfair competition under Cal. Bus. & Prof. Code Section 17200 (again, it can be presumed that Plaintiff prevailed here).

Thus, Plaintiff prevailed on three claims and got an injunction. Defendants prevailed on no affirmative claims and affirmative defenses. Defendants received no benefits sought in their suit.

Plaintiff, on the other hand, received the significant benefit of changing Defendant's behavior in the marketplace. Simply put, there are now things Defendant

cannot do, and other things it *must* do, like write to its distributors and report where necessary about its sales and imports.  (D.N. 372, D.N. 376.) Clearly, Plaintiff is the prevailing party.

## 2.    This Is An Exceptional Case

The Lanham Act permits an award of attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "While the term 'exceptional' is not defined in the statute, generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Lindy Pen,* 982 F.2d at 1409.  Bad faith is not required. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1218 (9th Cir. 2003) ("The issue is not necessarily one of bad faith: willful or deliberate infringement will suffice"). It is noteworthy that this standard is in the disjunctive.  *Horphag Research Ltd., v. Garcia*, 2002 U. S. Dist. LEXIS 26771 (C.D. Cal, 2002). If any one factor is present, the case is exceptional.

In the recent *Octane Fitness* case, the Supreme Court interpreted the "exceptional" standard in patent cases, and other courts have since applied the standard in trademark cases.  The Court said that an "exceptional" case is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness,* 134 S. Ct at 1756.  District Courts in the Ninth Circuit have been applying *Octane* in the trademark context, though the Ninth Circuit has not expressly adopted its reasoning in Lanham Act matters.  In one such case from the Northern District of California, the Court applied this holding and noted the *Octane* opinion also identified the fee concerns in Copyright cases, *i.e.,* district courts could consider "a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Fitbug Ltd. v. Fitbit, Inc.*, No. 13-

1418 SC, 2015 WL 3543116, at *1 (N.D. Cal. June 5, 2015).  *TriReme Med., LLC v.*
*AngioScore, Inc.,* 2015 WL 3463500, at *2 (N.D. Cal. May 29, 2015)

Taking all of these concerns into consideration, it is clear that this case is
"exceptional."  First, applying the Ninth Circuit's "malicious, fraudulent, deliberate or
willful" standard, the jury found and the Court subsequently confirmed that the
infringement was willful. Defendant's excessive and somewhat repetitive post-trial
briefing, has made this fact crystal-clear.  This Court wrote: "The jury found
Defendant willfully infringed on the registered "MY-THO" mark, and that Defendant
had not engaged in a fair use." (D.N. 372.)  Defendant had expressly argued that the
jury's finding that it "willfully used" the infringed mark did not mean that
infringement was willful.  The Court rejected this argument, finding that
"Nevertheless, in this case the jury's verdict clearly reflects a finding of willful
infringement." (D.N. 372.)  As noted by the Ninth Circuit, when a case of
infringement is willful, arguing that the case is not exceptional "is difficult to
advance."  *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) ("The district
court's decision to make a fee award to Rorion thus flows quite naturally from the
jury's finding of willful infringement and the legal standard for 'exceptional cases'
under Section 1117").

There are additional considerations that make the case under *Octane* as
"simply one that stands out from others with respect to the substantive strength of a
party's litigating position (considering both the governing law and the facts of the
case) or the unreasonable manner in which the case was litigated." Notably, it
certainly "stands out" that Defendants were Plaintiff's supplier, had been to Plaintiff's
showroom and seen Plaintiffs' MY-THO line of noodles and came out with a
competing brand that distinctively displayed the phrase "MỸ THO" prominently at
the top of their packaging.

Such a use of a mark that differs from a registered mark only by a tilde and a
hyphen is going to lead to consumer confusion.  Defendant never conceded  this

obvious fact, or the fact that stating the city of its origin is done all the time under FDA rules that govern this exact issue.  Indeed, Defendant still holds out hope that the Court will not enter an injunction against its blatant use of a confusing phrase. In an email as late as September 22, 2015, Defendant's counsel wrote: "Given the scope of the Court's anticipated injunction, *we may and* <u>*will continue* </u>*to use the City reference on our packages,* despite a "finding" of "willful" "infringement" relative to your 'non-geographic reference' [*sic*] to 'beautiful' 'something.'"  (Bjorgum Decl., Exh. E.) It is not quite clear the usage that Defendant refers to here, but it is clear that Defendant still feels entitled to use MY THO in some fashion that would mean Plaintiff is not that "prevailing party" for purposes of costs.  The Court obviously rejected this argument when it found Plaintiff entitled to costs.

This exchange is relevant to the copyright concerns identified in *Octane*—namely, concerns of deterrence.  It should be remembered that Plaintiff put on evidence of actual confusion, and that the purpose of trademark law  first and foremost is to avoid consumer confusion. *Inwood Laboratories, Inc. v. Ives Laboratories* (1982) 456 U.S. 844, 854, fn. 14 (a trademark protects the public so that it may avoid confusion in the marketplace and confidently distinguish among the goods of competing manufacturers.)  Yet Defendant is still defiant that its use of a confusing phrase is somehow acceptable.  Defendant is simply gaming the system by stringing out its re-branding as long as possible, and why not?  The verdict was reached on May 5, 2015, and the permanent injunction has not issued.  Damages were less than $20,000, yet the market for these products clearly exceeds $1 million per year.  So far, Defendant has little compelling incentive to stop infringement.  An award of attorneys' fees in this matter would go far to deter such conduct.

Finally, it should be remembered that Plaintiff provided no written opinion of counsel showing that its continued use of the mark was not an infringement.

### 3.  Defendant's Requested Attorney's Fees Are Reasonable

#### a.  Standards for Determining Reasonableness

In determining what constitutes "reasonable" attorney's fees, the Court first determines the "lodestar" amount, which is the amount of reasonable hours multiplied by the reasonable billing rate. This amount is presumptively reasonable. It may then be adjusted in the discretion of the Court by the so-called "*Kerr* factors." The Ninth Circuit has stated:

[I]n appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir.1975)...." *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir.1993) "The court need not consider all ... factors, but only those called into question by the case at hand and necessary to support the reasonableness of the fee award." *Kessler v. Assocs. Fin. Servs. Co. of Hawaii*, 639 F.2d 498, 500 n. 1 (9th Cir.1981). *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1158 (9th Cir. 2002).

The *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Cairns*, 292 F.3d at 1158, fn. 16. The prevailing market rate in the community is indicative of an attorney's reasonable hourly rate. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir. 1987). The fee applicant has the burden of producing satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. *Jordan* at 815 F.2d. 1262.

As to time expended, counsel needs to indicate the time expended in a reasonable manner, but "is not required to record in great detail how each minute of his time was expended [but] can meet his burden - although just barely - by simply listing his hours and identifying the general subject matter of his time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (denial of attorney's fees an abuse of discretion where attorney submitted of time in broad categories based on "summary of time slips"); *Lytle v. Carl*, 382 F.3d 978, 989 (9th Cir.2004) ("[p]laintiff's counsel ... is not required to record in great detail how each minute of his time was expended" but need only "identify the general subject matter of [their] time expenditures.").

Once the applicant submits appropriate evidence supporting its fee application the burden shifts to the opposing party to submit evidence challenging the accuracy and reasonableness of charges. *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1992).

### 4.  A Lodestar Amount of $884,468.53 Is Reasonable For This Case

#### a.  **Defendant's Counsel's Rates Are Eminently Reasonable**.

In this case, the rates are reasonable. Instructive information is found regarding the billable rates of similarly situated lawyers. According the annual survey of American Intellectual Property Association, in 2013, the mean (average) billable rate for an intellectual property attorney partner in Los Angeles was $561.00 / hr. (Bjorgum Dec., Exh. B.) The mean rate for the lowest quartile was $405 / hr.  The average rate for a private firm intellectual property associate in Los Angles was $412.

Defendant's trial counsel billed at a rate of $345 per hour for both lead trial counsel Eric Bjorgum and for co-counsel Marc Karish. These rates are below the customary rates for seasoned litigators.  Defendant's attorneys' firm is six years old, has handled dozens of intellectual property cases in addition to carrying an active docket of hundreds of trademarks and dozens of patents.  The qualifications of

Bjorgum and Karish are laid out in their respective declarations. (Bjorgum Decl., ¶¶ 2 – 4.)

Similarly, the rates charged by co-counsel are reasonable. Ezra Brutzkus Gubner's rates are laid out in the invoices filed under seal as Exhibit B to the Declaration of Jeffrey Kobulnick.  (It should be noted that the rates changed a few months after the case was filed.)

The rates at the Mandour firm were also reasonable and are set out in the under seal Exhibit A to the declaration of Ben T. Lila.

These rates are reasonable.  Recently court-approved rates for Lanham Act cases in Southern California show these are reasonable.  *E.g., Brighton Collectibles, Inc. v. Coldwater Creek Inc.,* No. 06–cv–01848–H–POR, 2009 U.S. Dist. LEXIS 4005, at *12, 2009 WL 160235 (S.D.Cal. Jan. 20, 2009) (approving fees in a Lanham Act/trademark infringement case at hourly rates ranging from $90 to $210 per hour for paralegal work and $125 to $625 per hour for attorney work); *Kohler Co. v. Domainjet, Inc.,* No. 11–cv–1767–BEN, 2013 U.S. Dist. LEXIS 50452, 6–7, 2013 WL 1411940 (S.D.Cal. Apr. 7, 2013) (approving unopposed rates of $590/hr and $630/hr for partner work in Lanham Act/trademark infringement case).

### b.  Defendant's Counsel Has Provided Billing Records Showing Reasonable Time for a Matter of This Complexity

Plaintiff's trial counsel has provided the actual invoices sent to Defendant. (Bjorgum Dec., Exh. A; Kobulnick Dec., Exh. B; Lila Dec., Exh. A.) As the Court can see, the invoices are very reasonable.  Jeffrey Kobulnick and Joseph Rothberg were the attorneys primarily responsible for this case for Plaintiff up through the second mediation.  They billed a total of 523.2 and 394.6 hours, respectively.  Mr. Kobulnick filed for a preliminary injunction, served and responded to discovery, took Defendant's 30(b)(6) deposition (which required motion practice), brought and defended against multiple dispositive motions, attended mediation

session, and prepared the case for trial, including trial exhibits and motions in limine.
It should be remembered the Defendant changed counsel twice in this case.

Kobulnick's firm Ezra Brutzkus also handled most of the briefing on this
matter.  As can be seen by the summary of its billings, sometimes multiple attorneys
needed to be called in for large projects.  The total amount billed by Ezra Brutzkus is
$617,046.50.  Finally, Ezra Brutzkus agreed to **a voluntary reduction** of $53,793 for
the March and April trial period. Thus, the amount sought for its fees after the
voluntary reduction is $553,426.00.

Eric Bjorgum and Marc Karish were the attorneys primarily responsible for this
case for Plaintiff following second mediation and up through trial.  They billed a total
of 457.60 hours to this matter.  Another attorney, Wil Bowen, who did some work for
Karish & Bjorgum drafting memos and pleadings, billed 27.6 hours at a rate of $295.
The total billed up through the trial was $166,102.20.  Karish & Bjorgum were hired
for the case only five weeks before trial, and had to quickly learn the entire record.  In
addition, the Court allowed late summary judgment motions, and in the weeks before
trial, Karish & Bjorgum took or attended six depositions, prepared all the witnesses
and conducted the trial itself.

Since the conclusion of the trial, Plaintiff's counsel has billed approximately
$75,451 in fees.  Part of this was spent on the successful motion for permanent
injunction, but the majority of it has been spent on Defendant's repetitive and
unsuccessful motion practice.  For instance, Defendant has brought motions for
judgment as a matter of law and a motion to "correct" the Court's ruling on granting
an injunction for Plaintiff.

All told, Defendant's bills break down thus:

| Ezra Brutzkus Gubner | $617,046.50 - $53,793 voluntary reduction, adjusting this amount down to $563,253.50. |
|---|---|

1294365

| Mandour & Associates | $74,394.25. |
|---|---|
| Karish & Bjorgum | $246,820.78 |
| Total | **$884,468.53.** |

Thus, the basic lodestar amount for this case is $884,468.53.  That amount is very reasonable.  Ezra Brutzkus has 27 attorneys.  The average cost of a trademark litigation with between $1 million and $10 million at stake for a firm of that size is $868,000.  (Bjorgum Decl., Exh. B.)

### 5.  The *Kerr* Factors Indicate that the Lodestar Amount Should Be Augmented, Even Thought Plaintiff Does Not Seek Augmentation

Indeed, this Court should augment the lodestar amount following analysis of the *Kerr* factors, even though Plaintiff only seeks 75% of what it actually paid.

(1) <u>The time and labor required</u>: As shown above, the time and labor billed for in this case are very reasonable, and Plaintiff's counsel Ezra Brutzkus agreed to a voluntary reduction of its fees in the amount of $53,793 for time billed during the March and April trial time period.

(2) <u>The novelty and difficulty of the questions</u>: This case was difficult because Defendant made it so.  For instance, just before trial, Defendant refused to allow Plaintiff to stipulate to dismiss the trade dress claim in exchange for a waiver of fees and costs. (Bjorgum Decl., Exh. F.)  Leaving out the trade dress claim would have simplified the trial greatly.

Moreover, as detailed in paragraphs 8 – 11 of the Declaration of Jeffrey Kobulnick, Defendant made a variety of bizarre moves in this case.  Defendant retained three different law firms, which brought a number of unnecessary and costly challenges, and, while represented by its second counsel, attorney Hoa Truong, Defendant filed (1) an untimely Rule 12(b)(6) motion to dismiss the complaint; and (2) a baseless motion for summary judgment based on the theory that Plaintiff's

1294365

well-established trademark rights were barred by the World Trade Agreement ("WTA"), notwithstanding the clear express language of the WTA precluding challenges against trademark rights which were established before that agreement was ratified.

Plaintiff was also forced to file a motion to compel discovery responses when Defendant (then still represented by Mr. Truong) refused to produce certain documents and information and when Defendant's Chairman Mr. Pham Van Tu failed to show up for his noticed deposition.  Even after being ordered to appear, Plaintiffs were required to seek Judge Nagle's assistance as the witness refused to answer certain questions regarding Defendant's profits which the Court had already ordered Defendant to provide.

Finally, no reasonable settlement could be reached. The parties attended two full day mediation sessions after the Court issued its above-referenced Order.  The first mediation was with Judge Nagle on March 31, 2014, which Mr. Pham Van Tu attended.  (*See* Docket No. 56.) The second mediation was with Judge Gandhi.  As the Court will recall, Mr. Pham Van Tu did not attend that mediation and sent other representatives from the company instead, and it was only at the end of a very long day that Plaintiff was told that those representatives lacked settlement authority. Plaintiff was forced to incur significant attorney fees and costs preparing for and attending those mediation sessions when Defendant had no good faith intent to settle this case.

Nor did Defendant cooperate in the preparation of pre-trial documents as required by the Court's Order re Civil Jury Trials. Mr. Truong was not authorized to stipulate to certain items for trial, which left Plaintiff no choice but to file 6 motions *in limine* which notably Defendant did not timely oppose (see Notices of Non-Opposition, Docket Nos. 180-185).  Defendant's Chairman Mr. Pham Van Tu stated several times in this case that he was "a citizen of Vietnam, and U.S law did not apply to him." Plaintiff was ready to go to trial as scheduled in December 2014.  The Court

continued the trial date upon granting Mr. Truong's motion to withdraw as counsel, at which point Defendant retained its third counsel of record, Ernest Price and Arnold Sklar of the Ropers Majeski firm.  Defendant's latest counsel did everything it could to "muddy the waters," raising new issues – many of which lacking in merit – and filing 8 motions *in limine*.  Anhing also had to file 4 more motions *in limine* given that the parties were unable to agree on certain issues.  While the Court subsequently ordered the parties to reduce the number of motions *in limine* to 5 each, oppositions and replies had to be prepared, which took extensive time.  Given the volume of issues and timing of the motions *in limine,* requiring involvement of several EBG attorneys firm who normally did not work on this case.  Further, all of the pre-trial documents had to be redone, which required extensive meet and confer.

(3) <u>The skill requisite to perform the legal service properly</u>: A high degree of skill was required to wind this case up.  Karish & Bjorgum prepared for trial in approximately one month.  Jeffrey Kobulnick is a very experienced IP and trademark attorney.

(4) <u>The preclusion of other employment by the attorney due to acceptance of the case</u>: Plaintiff's attorneys' firm is small.  In a firm with five attorneys and two litigators, engagement by even one attorney means that opportunities are lost elsewhere. Mr. Kobulnick has a full schedule as well.

(5) <u>The customary fee</u>:  The customary fee for even a simple trademark case is well into the six figures.  Plaintiff includes as Exhibit B to the Bjorgum declaration of copy of the relevant pages from the American Intellectual Property Association's 2013 Report on Economic Activity. This report contains detailed survey information for intellectual property practice costs and fees. Plaintiff's counsel's fees are still off the low end of the scale. For instance:

The cost of a trademark case in Los Angeles in 2013, with between $1 million and $10 million at issue, is $460,000 for firms of 4-15 attorneys and $868,000 for firms of 16-59 attorneys.

1    (6) <u>Whether the fee is fixed or contingent:</u> The fee in this case is hourly.

2    (7) <u>Time limitations imposed by the client or the circumstances:</u> This factor is

3    not applicable.

4    (8) <u>The amount involved and the results obtained</u>: The jury found willful

5    infringement.  The result was definitive for Plaintiff, and there is a strong argument

6    that all of these claims are inextricably intertwined, so no apportionment is needed.

7    Although the prevailing party is entitled only to attorney's fees for work expended in

8    prosecuting the Lanham Act claims, where plaintiffs' claims are "inextricably

9    intertwined" in that they are all based on common allegations, no apportionment is

10   required. *See Love v. Mail on Sunday,* 2007 WL 2709975, at *3, 2007 U.S. Dist.

11   LEXIS 97061, at *3 (C.D.Cal.2007) ("These claims were therefore 'inextricably

12   intertwined,' and the Court will not apportion costs between them."). *Partners for*

13   *Health & Home, L.P. v. Seung Wee Yang*, 488 B.R. 431, 439 (C.D. Cal. 2012) (citing

14   *Love v. Mail on Sunday,* 2007 WL 2709975, at *3, 2007 U.S. Dist. LEXIS 97061, at

15   *3 (C.D.Cal.2007)).

16   However, Plaintiff recognizes that other claims were involved and that it was

17   not successful on all claims.  Therefore, Plaintiff will agree to a voluntary reduction of

18   25% of the amount shown above.  This approach has been approved in other cases

19   involving multiple claims.  *Designing Health, Inc. v. Erasmus,* No. CV 98-4758 LGB

20   (CWX), 2003 WL 25902463, at *25 (C.D. Cal. May 1, 2003) (approving co-counsel's

21   estimate that it spent 60% of its time on Lanham Act claims).

22   Thus, after the 25% reduction, **the total amount of fees requested by Plaintiff**

23   **is $663,351.40.**

24   (9) <u>The experience, reputation, and ability of the attorneys</u>. As shown above,

25   Plaintiff's counsel has considerable experience in federal court and intellectual

26   property litigation.  Defendants' counsel is a large law firm that had staffed the case

27   with two lawyers and another firm that attended trial.

28   (10) <u>The "undesirability" of the case:</u> This factor is not applicable.

1294365

(11) <u>The nature and length of the professional relationship with the client</u>: this was the first case handled by Karish & Bjorgum for the Plaintiff.

(12) <u>Awards in similar cases</u>:  Analogous attorneys' fees have been awarded in many Lanham Act cases.  *E.g., Cairns v. Franklin Mint Co.,* 115 F. Supp.2d 1185 (C.D. Cal. 2000), aff'd 292 F.3d 1139, 63 U.S.P.Q. 2d 1279 (9th Cir. 2002) (Under the Lanham Act court awarded $1,635,000. in attorney's fees for defending against "groundless and unreasonable" dilution and false advertising counts, in addition to $638,000. in attorney's fees mandated by the California right of publicity law. Total fees awarded: $2.3 million.); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 19 U.S.P.Q.2d 1253, 1264 (5th Cir. 1991), aff'd, 505 U.S. 763, 120 L. Ed. 2d 615, 112 S. Ct. 2753, 23 U.S.P.Q.2d 1081 (1992) (attorney's fee award of $940,000 against infringer was affirmed where defendant "brazenly copied" plaintiff's trade dress and rushed to foreclose plaintiff's expansion into lucrative markets); *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 30 U.S.P.Q.2d 1173 (11th Cir. 1994) ($925,481 attorney's fee award was affirmed against infringer); *Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd.*, 668 F.3d 677, 687, 101 U.S.P.Q.2d 1553 (9th Cir. 2012) (Awarding $836,900. attorney fees to prevailing defendant where there was "an utter failure of proof" on the issue of non-functionality of the plaintiff's alleged trade dress in a product design.).

In sum, under the circumstances of this case, an award of $663,351.40 is reasonable.

**C.  Plaintiff Is Entitled to Prejudgment Interest**

In a case like this, a Plaintiff is entitled to prejudgment interest, otherwise relief is not complete.  Not only has Anhing had to pay lawyers and go through a federal jury trial, it has lost the use of that money and the use profits from infringing goods. Prejudgment interest is a measure that "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered,

thereby achieving full compensation for the injury those damages are intended to redress." *Schneider v. City. of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002)

"The time has come, we think, to generalize, and to announce a rule that prejudgment interest should be presumptively available to victims of federal law violations. Without it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay. *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989). Prejudgment interest should be calculated from the day the complaint was filed. The rate applied to the interest should be the prime rate, which has remained at 3.25% since December 16, 2008; this rate is very conservative. *Int'l Bus. Advisors Ltd. v. Payless Drug Stores Nw. Inc.*, No. C-91-1011-VRW, 1993 WL 237414, at *7 (N.D. Cal. Jan. 11, 1993) (directing party to submit evidence on the "unsecured borrowing rate of the party to be charged" because the prime rate was too low). This rate should apply to the judgment and to attorney's fees. *Id.*

## V.  CONCLUSION

For the foregoing reasons, damages should be enhanced, Plaintiff's motion for attorneys' fees should be granted and prejudgment interest should be awarded.

Respectfully submitted,

Dated:  October 22, 2015                KARISH & BJORGUM PC


By:    /s/Eric Bjorgum
     Eric Bjorgum
Attorneys for Plaintiff, ANHING
CORPORATION